T.C. Memo. 2018-2

UNITED STATES TAX COURT

JOAN FARR f.k.a. JOAN HEFFINGTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2746-15.                    Filed January 9, 2018.

Joan Farr f.k.a. Joan Heffington, pro se.

<u>Patrick A. Greenleaf</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following deficiencies in petitioner's Federal excise taxes under section 4958(a)(1) and (b)[1] for the years indicated:

_____

[1]All section references are to the Internal Revenue Code (Code) in effect for 2010, 2011, and 2012, the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]

| Year | Sec. 4958(a)(1) | Sec. 4958(b) |
|------|-----------------|--------------|
| 2010 | $1,740.94 | $13,927.52 |
| 2011 | 6,808.13 | 54,465.06 |
| 2012 | 1,324.76 | 10,598.10 |

FINDINGS OF FACT

Virtually all of the facts have been deemed established pursuant to Rule 91(f)(3).

Petitioner resided in Kansas at the time she filed the petition.

At all relevant times, including during 2010, 2011, and 2012, petitioner was the chief executive officer and a member of the board of directors of the Association for Honest Attorneys (AHA). Any work that petitioner did for AHA during 2010, 2011, and 2012 was done at her residence.

Petitioner had organized AHA in 2003 as a nonprofit corporation under the laws of the State of Kansas. During that year, petitioner also prepared and filed on behalf of AHA an application with the Internal Revenue Service (IRS) for a determination that it qualified as an organization described in section 501(c)(3) that was exempt from Federal income tax (tax). The IRS granted that application and made that determination.

**[*3]** For each of the years 2010, 2011, and 2012, AHA filed with the IRS Form 990-N (e-Postcard), in which it reported that (1) it continued to operate as a tax-exempt organization described in section 501(c)(3); (2) petitioner was its principal officer; and (3) its annual gross receipts were less than $50,000.

AHA did not file for any of the years 2010, 2011, and 2012 Form 990-PF, Return of Private Foundation or Section 4947(a)(1) Nonexempt Charitable Trust Treated as Private Foundation (Form 990-PF), which must be filed annually by every private foundation or section 4947(a)(1) trust that is treated as a private foundation, regardless of its revenues or assets.[2]  Nor did AHA file for any of the years 2010, 2011, and 2012 Form 4720, Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code (Form 4720), which must be filed by every private foundation or section 4947(a)(1) trust that is treated as a private foundation in the event certain excise taxes under chapters 41 and 42 of the Code are incurred.

AHA filed a petition in the Court for a declaratory judgment under section 7428 with respect to a notice of determination that respondent had issued to it on February 3, 2015, thereby commencing the case at docket No. 14562-15X.  In that

---

[2]We have taken judicial notice of certain facts regarding certain IRS forms and/or certain IRS instructions with respect to certain IRS forms.

[*4] notice, respondent determined to revoke, effective January 1, 2010, AHA's

exemption from tax under section 501(a) because respondent had determined that

AHA "ha[d] not operated in accordance with the provisions of section 501(c)(3)".[3]

During 2010, 2011, and 2012, AHA maintained a checking account at Verus

Bank in Derby, Kansas (AHA checking account). During those years, petitioner

had exclusive signature authority for that checking account.

During 2010, 2011, and 2012, petitioner used the AHA checking account to

make certain purchases from certain third parties and certain cash withdrawals

totaling $6,963.76, $27,232.53, and $5,299.05, respectively.[4] Specifically,

petitioner used the AHA checking account in 2010, 2011, and 2012 to make

certain purchases from certain department stores and grocery stores, such as

Dillard's, Walmart, Kwik Shop, Kohl's, Walgreens, and Dillons. In addition,

petitioner used the AHA checking account in 2010, 2011, and 2012 to make

automobile-related purchases, such as QuikTrip, A&A Auto Salvage, Derby Quick

---

[3]We have taken judicial notice of certain facts relating to the notice of determination issued to AHA on which the declaratory judgment proceeding that AHA commenced in the case at docket No. 14562-15X is based.

[4]Attached as an appendix are tables that set forth all of the purchases from third parties that petitioner made with checks drawn on, and all of the cash withdrawals that she made from, the AHA checking account totaling $6,963.76, $27,232.53, and $5,299.05 during 2010, 2011, and 2012, respectively.

[*5] Lube, K-15 Auto Salvage, and Meineke.  Petitioner also used the AHA checking account in 2010, 2011, and 2012 to make certain home-related and real-estate-related purchases from certain stores, such as Slumberland, Westar Energy, Lowes, T&S Tree Service, Gene's Stump Grinding Service, Dutch's, Echostar Dish, Allstate, Roberts Overdoors Inc., Lusco Brick & Stone, MY Construction, and Star Lumber & Supply.  In addition, petitioner used the AHA checking account in 2010 and 2011 to make certain payments with respect to a USAA credit card.  Petitioner also used the AHA checking account in 2011 to make a $189.50 payment to an animal clinic and a $7,750 payment to St. John's Military School for tuition for her son, and another $100 payment to that school.  In addition, petitioner used the AHA checking account in 2011 to pay $2,200 for the exhumation and DNA testing of her father's remains.

Although petitioner used the AHA checking account during 2010, 2011, and 2012 to make certain purchases from certain third parties and certain cash withdrawals totaling $6,963.76, $27,232.53, and $5,299.05, respectively, she did not report any income from AHA in the individual tax return that she filed for each of those years.

AHA did not pay petitioner a salary during any of the years 2010 through 2012.  Nor did AHA issue to petitioner Form W-2, Wage and Tax Statement, or

[*6] any type of Form 1099 for any of those years. In addition, AHA did not file any Forms 941, Employer's Quarterly Federal Tax Return (Forms 941), or any Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940), for any of the years 2010, 2011, and 2012 or for any periods within any of those years. During the period 2003 through 2012, AHA did not execute any promissory notes payable to petitioner and did not make any payments of interest to her.

Respondent issued to petitioner a notice of deficiency (notice) for her taxable years 2010, 2011, and 2012. In that notice, respondent determined, inter alia, that during those taxable years petitioner, a so-called disqualified person, had engaged in certain excess benefit transactions with AHA under section 4958 totaling $6,963.76, $27,232.53, and $5,299.05, respectively.

## OPINION

We must decide whether to sustain respondent's determinations in the notice. Petitioner has the burden of establishing that those determinations are erroneous.[5] See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

_____

[5]Sec. 7491(a) is inapplicable because it does not apply to taxes imposed by subtitle D of the Code, such as the taxes under sec. 4958 that are at issue here.

[*7] Before deciding whether to sustain respondent's determinations in the notice, we summarize the statutory framework within which we must make that decision. Section 4958(a)(1) imposes on each "excess benefit transaction" a so-called first-tier "tax equal to 25 percent of the excess benefit." The first-tier tax is required to be paid by any disqualified person, as defined in section 4958(f)(1), with respect to that excess benefit transaction. See sec. 4958(a)(1).

Section 4958(c)(1)(A) defines the term "excess benefit transaction" to mean generally "any transaction in which an economic benefit is provided by an applicable tax-exempt organization directly or indirectly to or for the use of any disqualified person if the value of the economic benefit provided exceeds the value of the consideration (including the performance of services) received for providing such benefit." The term "excess benefit" means the excess referred to in section 4958(c)(1)(A).

As pertinent here, section 4958(f)(1)(A) defines the term "disqualified person" to mean with respect to any transaction, inter alia, "any person who was, at any time during the 5-year period ending on the date of such transaction, in a position to exercise substantial influence over the affairs of the organization".

Section 4958(e) defines the term "applicable tax-exempt organization" in pertinent part to mean--

**[*8]**  (1) any organization which (without regard to any excess benefit) would be described in paragraph (3) * * * of section 501(c) and exempt from tax under section 501(a), and

(2) any organization which was described in * * * [section 4958(e)(1)] at any time during the 5-year period ending on the date of the transaction.[6]

Section 4958(b) imposes a so-called second-tier "tax equal to 200 percent of the excess benefit involved."  The second-tier tax will be imposed "[i]n any case in which an initial [first-tier] tax is imposed by * * * [section 4958] (a)(1) on an excess benefit transaction and the excess benefit involved in such transaction is not corrected within the taxable period".  The second-tier tax imposed by section 4958(b) is required to be paid by any disqualified person, as defined in section 4958(f)(1), with respect to that excess benefit transaction.

Section 4958(f)(6) defines the terms "correction" and "correct" for purposes of the second-tier tax imposed by section 4958(b) to mean,

with respect to any excess benefit transaction, undoing the excess benefit to the extent possible, and taking any additional measures necessary to place the organization in a financial position not worse than that in which it would be if the disqualified person were dealing under the highest fiduciary standards * * *

---

[6]The term "applicable tax-exempt organization"does not include a private foundation, as defined in sec. 509(a).

**[*9]** Section 4958(f)(5) defines the term "taxable period" for purposes of the second-tier tax imposed by section 4958(b) to mean,

> with respect to any excess benefit transaction, the period beginning with the date on which the transaction occurs and ending on the earliest of--
>
> > (A) the date of mailing a notice of deficiency under section 6212 with respect to the tax imposed by * * * [section 4958] (a)(1), or
> >
> > (B) the date on which the tax imposed by * * * [section 4958] (a)(1) is assessed.

We turn now to whether to sustain respondent's determinations in the notice. In doing so, we must decide (1) whether AHA is an applicable tax-exempt organization, as defined in section 4958(e); (2) whether petitioner is a disqualified person with respect to AHA, as defined in section 4958(f)(1)(A); (3) whether during each of her taxable years 2010, 2011, and 2012 petitioner engaged in excess benefit transactions with AHA, as defined in section 4958(c)(1)(A), totaling $6,963.76, $27,232.53, and $5,299.05, respectively; and (4) whether petitioner corrected the excess benefits involved in those respective excess benefit transactions within the taxable period, as defined in section 4958(f)(5).

**[\*10]** First-Tier Tax Under Section 4958(a)(1)

Applicable Tax-Exempt Organization

In 2003, petitioner prepared and filed on behalf of AHA an application with the IRS for a determination that it qualified as an organization described in section 501(c)(3) that was exempt from tax. The IRS granted that application and made that determination.

For each of the years 2010, 2011, and 2012, AHA filed with the IRS Form 990-N (e-Postcard), in which it reported that (1) it continued to operate as a tax-exempt organization described in section 501(c)(3); (2) petitioner was its principal officer; and (3) its annual gross receipts were less than $50,000.

AHA did not file for any of the years 2010, 2011, and 2012 Form 990-PF, which must be filed annually by every private foundation or section 4947(a)(1) trust that is treated as a private foundation, regardless of its revenues or assets. Nor did AHA file for any of those years Form 4720, which must be filed by every private foundation or section 4947(a)(1) trust that is treated as a private foundation in the event certain excise taxes under chapters 41 and 42 of the Code are incurred.

AHA filed a petition in the Court for a declaratory judgment under section 7428 with respect to a notice of determination that respondent had issued to it on

**[\*11]** February 3, 2015, thereby commencing the case at docket No. 14562-15X. In that notice, respondent determined to revoke, effective January 1, 2010, AHA's exemption from tax under section 501(a) because respondent had determined that AHA "ha[d] not operated in accordance with the provisions of section 501(c)(3)".

Petitioner does not dispute respondent's determinations in the notice that during each of the years 2010, 2011, and 2012 AHA was an applicable tax-exempt organization, as defined in section 4958(e).

On the record before us, we find that throughout the period commencing with its inception in 2003 though December 31, 2009, the IRS treated AHA as an organization described in section 501(c)(3) that was exempt from tax. On that record, we further find that during each of the years 2010, 2011, and 2012 AHA was an applicable tax-exempt organization, as defined in section 4958(e).

Disqualified Person

During 2010, 2011, and 2012, petitioner was the chief executive officer and a member of the board of directors of AHA. During those years, she had exclusive signature authority for the AHA checking account at Verus Bank.

Petitioner does not dispute respondent's determinations in the notice that during each of the years 2010, 2011, and 2012 she was a disqualified person with respect to AHA, as defined in section 4958(f)(1)(A).

[*12] On the record before us, we find that during each of the years 2010, 2011, and 2012, petitioner was in a position to exercise substantial influence over the affairs of AHA. See sec. 53.4958-3(c)(1) to (3), Foundation Excise Tax Regs. (persons deemed to have substantial influence over an organization include voting members of the governing body, presidents, chief executive officers, and treasurers). On that record, we further find that during each of those years petitioner was a disqualified person with respect to AHA, as defined in section 4958(f)(1)(A).

Excess Benefit Transactions

During 2010, 2011, and 2012, petitioner used the AHA checking account to make certain purchases from certain third parties and certain cash withdrawals totaling $6,963.76, $27,232.53, and $5,299.05, respectively.[7] Petitioner disputes respondent's determinations in the notice that those purchases and those cash withdrawals are excess benefit transactions, as defined in section 4958(c)(1)(A). In support of her position, petitioner advances the following three contentions: (1) each of the payments to third parties for the purchases at issue was for a business or an exempt purpose of AHA; (2) each of those payments and each of the cash withdrawals at issue constituted compensation that AHA owed petitioner for services that she had rendered for AHA during years prior to 2010; and/or

---

[7]See supra note 4.

**[\*13]** (3) each of the payments at issue and each of the cash withdrawals at issue represented the repayment by AHA of certain loans that petitioner had made to AHA during years prior to 2010.

In support of the contentions that petitioner advances in support of her position, she relies on her testimony and certain documentary evidence. With respect to petitioner's testimony on which she relies, we found her testimony to be general, conclusory, vague, self-serving, uncorroborated, and/or not credible in certain material respects. We are not required to, and we shall not, rely on petitioner's testimony to establish her position or any of the contentions that she advances in support of her position that none of the purchases from certain third parties and certain cash withdrawals totaling $6,963.76, $27,232.53, and $5,299.05, respectively, that she made during 2010, 2011, and 2012 is an excess benefit transaction, as defined in section 4958(c)(1)(A). See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

With respect to certain documentary evidence on which petitioner relies, we found that evidence to be questionable, not reliable, not credible, and/or otherwise not persuasive.[8] We are not required to, and we shall not, rely on any such

---

[8]Petitioner prepared at least some of the documentary evidence on which she relies after respondent began an examination of her taxable years 2010, 2011,

(continued...)

[*14] documentary evidence to establish petitioner's position or any of the contentions that she advances in support of her position that none of the purchases from certain third parties and certain cash withdrawals totaling $6,963.76, $27,232.53, and $5,299.05, respectively, that she made during 2010, 2011, and 2012 is an excess benefit transaction, as defined in section 4958(c)(1)(A).

On the record before us, we find that petitioner has failed to carry her burden of establishing that none of the purchases from certain third parties and certain cash withdrawals totaling $6,963.76, $27,232.53, and $5,299.05, respectively, that she made during 2010, 2011, and 2012 is an excess benefit transaction, as defined in section 4958(c)(1)(A).

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing error in respondent's determinations in the notice that there are deficiencies of $1,740.94, $6,808.13, and $1,324.79 under section 4958(a)(1) for her taxable years 2010, 2011, and 2012, respectively.

---

[8](...continued)
and 2012.

**[*15]** <u>Second-Tier Tax Under Section 4958(b)</u>

Petitioner does not dispute that she has not "corrected within the taxable period" the "excess benefit involved in" each excess benefit transaction, <u>see</u> sec. 4958(b), in which respondent determined she engaged during each of the years 2010, 2011, and 2012 and as a result of which respondent determined a deficiency under section 4958(a)(1) for each of those years that we have sustained. We presume that petitioner does not dispute those matters because it is her position that she did not engage in any excess benefit transaction with AHA during 2010, 2011, or 2012.

On the record before us, we find that petitioner has not corrected within the taxable period the excess benefit involved in each excess benefit transaction in which respondent determined she engaged during each of the years 2010, 2011, and 2012 and as a result of which respondent determined a deficiency under section 4958(a)(1) for each of those years that we have sustained.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing error in respondent's determinations in the notice that there are deficiencies of $13,927.52, $54,465.06, and $10,598.10 under section 4958(b) for her taxable years 2010, 2011, and 2012, respectively.

**[*16]** To reflect the foregoing,

Decision will be entered for

respondent.

[*17]                                    APPENDIX

## Checks Drawn on AHA's Checking Account During 2010

## Checks Used for Petitioner's Personal Expenses

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 1/4/10 | 1470 | Dillards | $119.80 |
| 1/7/10 | 1471 | QuikTrip | 39.40 |
| 1/6/10 | 1473 | Cingular Wireless | 26.70 |
| 1/13/10 | 1474 | A&A Auto Salvage | 134.94 |
| 1/14/10 | 1476 | Allstate | 368.44 |
| 1/14/10 | 1478 | Dr. Scott Landes | 24.00 |
| 1/14/10 | 1481 | Dillons | 162.40 |
| 1/14/10 | 1482 | Dillons | 39.80 |
| 1/19/10 | 1488 | Hollister | 69.10 |
| 1/21/10 | 1493 | QuikTrip | 41.71 |
| 1/28/10 | 1497 | Dillons | 21.00 |
| 1/27/10 | 1500 | Kountry Kupboard | 10.42 |
| 2/10/10 | 1501 | Gary Shawalter | 150.00 |
| 2/2/10 | 1502 | Kwik Shop | 53.20 |
| 2/8/10 | 1504 | Dillons | 32.80 |
| 2/9/10 | 1505 | Kwik Shop | 45.40 |
| 2/11/10 | 1506 | Dillons | 60.53 |
| 2/18/10 | 1508 | QuikTrip | 39.81 |
| 2/16/10 | 1509 | WalMart | 21.37 |

[*18]

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 2/19/10 | 1510 | Derby Quick Lube | 34.37 |
| 2/19/10 | 1511 | WalMart | 16.35 |
| 2/19/10 | 1512 | Kwik Shop | 42.64 |
| 3/1/10 | 1514 | USAA Credit Card | 29.90 |
| 3/15/10 | 1515 | Dillons | 35.20 |
| 3/15/10 | 1517 | Rods | 30.00 |
| 3/17/10 | 1518 | WalMart | 41.48 |
| Total | | | 1,690.76 |

Checks Used To Obtain Cash for Petitioner

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 1/11/10 | 1480 | Verus Bank | $300.00 |
| 2/19/10 | 1513 | Verus Bank | 4,900.00 |
| 3/18/10 | 1519 | Verus Bank | 40.00 |
| 4/16/10 | 1520 | Joan Heffington | 33.00 |
| Total | | | 5,273.00 |
| Grand total | | | 6,963.76 |

[*19]      Checks Drawn on AHA's Checking Account During 2011

Checks Used for Petitioner's Personal Expenses

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 6/20/11 | 1522 | Dillons | $10.12 |
| 6/24/11 | 1523 | Stamps & Misc | 65.37 |
| 7/9/11 | 1524 | QuikTrip | 34.08 |
| 8/10/11 | --- | Westar Energy | 112.42 |
| 8/16/11 | 1530 | WalMart | 90.25 |
| 8/15/11 | 1533 | Improv | 100.00 |
| 8/18/11 | 1534 | Slumberland | 339.07 |
| 8/17/11 | 1535 | DRC | 30.00 |
| 8/22/11 | 1537 | WalMart | 118.66 |
| 8/22/11 | 1538 | WalMart | 41.28 |
| 8/19/11 | 1539 | Penny's | 31.00 |
| 8/23/11 | 1540 | WalMart | 71.25 |
| 8/23/11 | 1541 | Walgreens | 9.12 |
| 8/24/11 | 1542 | QuikTrip | 76.08 |
| 8/4/11 | 1543 | Dillons | 30.00 |
| 8/25/11 | 1544 | WalMart | 315.96 |
| 8/24/11 | 1545 | USAA Credit Card | 399.11 |
| 8/30/11 | 1547 | QuikTrip | 59.61 |
| 8/26/11 | 1548 | St. John's Military School | 7,750.00 |

[*20]

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 8/30/11 | 1550 | T&S Tree Service | 350.00 |
| 8/30/11 | 1551 | Gene's Stump Grinding Service | 50.00 |
| 9/2/11 | 1552 | Dillons | 50.00 |
| 9/8/11 | 1553 | El Paso Animal Clinic | 189.50 |
| 9/13/11 | 1554 | WalMart | 22.11 |
| 9/10/11 | 1555 | Dutch's | 251.06 |
| 9/10/11 | 1556 | Great Clips | 35.87 |
| 9/19/11 | 1557 | WalMart | 100.91 |
| 9/20/11 | 1559 | WalMart | 34.01 |
| 9/20/11 | 1561 | Kohls | 31.25 |
| 9/19/11 | 1562 | Hollister | 65.87 |
| 10/2/11 | 1564 | Rollins | 900.00 |
| 10/12/11 | 1565 | Echostar Dish | 50.43 |
| 10/6/11 | 1566 | Ryan Lawn & Tree | 175.08 |
| 10/8/11 | 1568 | Lowes | 117.35 |
| 10/13/11 | 1570 | WalMart | 27.77 |
| 10/11/11 | 1571 | Sedgwick Co. Treasurer | 485.10 |
| 10/14/11 | 1572 | Meineke Car Care | 393.66 |
| 10/15/11 | 1573 | St. John's Military School | 100.00 |
| 10/18/11 | 1574 | WalMart | 31.33 |

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 10/19/11 | 1575 | Central Mississippi Crematory, Inc. | 35.00 |
| 10/19/11 | 1601 | Medscreens, Inc. | 1,300.00 |
| 11/3/11 | 1602 | Dillons | 50.00 |
| 11/8/11 | --- | Perfect Memorials | 17.95 |
| 11/18/11 | --- | Joel Osteen | 18.00 |
| 11/1/11 | --- | Subway | 11.05 |
| 11/7/11 | 1604 | Dillons | 72.36 |
| 11/10/11 | 1607 | Penny's | 96.56 |
| 11/11/11 | 1609 | Dish | 50.43 |
| 11/15/11 | 1612 | K-15 Auto Salvage | 30.00 |
| 11/15/11 | 1613 | WalMart | 78.23 |
| 12/13/11 | 1615 | Lowes | 59.30 |
| 12/28/11 | --- | O'reilly Auto | 17.24 |
| 12/16/11 | --- | Braums | 10.80 |
| 12/23/11 | 1617 | AT&T Solutions | 40.00 |
| --- | 1618 | Lowes | 26.93 |
| Total | | | 15,058.53 |

Checks Used To Obtain Cash for Petitioner

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 8/4/11 | --- | Verus Bank | $10,350.00 |
| 8/8/11 | 1526 | Joan Heffington | 300.00 |
| 8/11/11 | 1529 | Cash | 100.00 |

**[*22]**

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 8/15/11 | 1532 | Joan Heffington | 200.00 |
| 8/17/11 | 1536 | Joan Heffington | 150.00 |
| 8/26/11 | 1549 | Joan Heffington | 234.00 |
| 9/19/11 | 1560 | Joan Heffington | 420.00 |
| 3/18/10 | 1567 | Joan Heffington | 420.00 |
| Total | | | 12,174.00 |
| Grand total | | | 27,232.53 |

**[\*23]**

## Checks Drawn on AHA's Checking Account During 2012

### Checks Used for Petitioner's Personal Expenses

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 1/5/12 | --- | Motor Mint Cars | $19.90 |
| 1/13/12 | 1619 | My Construction | 1,050.00 |
| 1/17/12 | 1621 | Roberts Overdoors, Inc. | 1,610.53 |
| 1/18/12 | 1623 | Lusco Brick & Stone | 526.53 |
| 1/19/12 | 1624 | Star Lumber & Supply | 1,251.98 |
| 1/25/12 | 1625 | Dillons | 44.00 |
| 1/27/12 | 1626 | Lowes | 38.60 |
| 2/14/12 | --- | QuikTrip | 20.00 |
| 2/15/12 | 1630 | WalMart | 183.51 |
| 9/10/12 | --- | QuikTrip | 9.00 |
| 9/12/12 | --- | Kwik Shop | 5.00 |
| Total | | | 4,759.05 |

### Checks Used To Obtain Cash for Petitioner

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 1/24/12 | --- | Cash | $120.00 |
| 1/30/12 | 1628 | Joan Heffington | 220.00 |
| 2/12/12 | --- | Cash | 60.00 |
| 2/9/12 | 1629 | Joan Heffington | 70.00 |
| 8/7/12 | --- | Joan Heffington | 20.00 |

**[*24]**

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 9/7/12 | --- | Cash from deposit slip | 10.00 |
| 10/15/12 | --- | Joan Heffington | 40.00 |
| Total | | | 540.00 |
| Grand total | | | 5,299.05 |